607 P.2d 10

ARIZONA DEPARTMENT OF ECONOM-
IC SECURITY, John L. Huerta, Di-
rector, and Jimmie K. Riddles, Claimant,
Appellants,

v.

MAGMA COPPER COMPANY, Appellee.

No. 1 CA–CIV 3965.

Court of Appeals of Arizona,
Division 1,
Department A.

April 19, 1979.

Supplemental Opinion on Denial of
Rehearing July 6, 1979.

Review Granted Sept. 6, 1979.

28

Robert K. Corbin, Arizona Atty. Gen. by Roderick G. McDougall, Chief Counsel, Civ. Div. and James A. Tucker, Asst. Attys. Gen., Phoenix, for appellants.

Twitty, Sievwright & Mills by Kenneth D. Nyman and N. Douglas Grimwood, Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

The Department of Economic Security appeals from a judgment of the Superior Court setting aside a decision of the Department which determined that an offer of internal transfer and continued employment made by the Appellee Magma Copper Company to Jimmie Riddles, an unemployment compensation claimant was not an offer of "suitable work" pursuant to A.R.S. § 23–776,[1] which provides for disqualification of claimants who fail to accept offers of suitable work. We affirm the judgment of the trial court.

Riddles was an underground employee of Magma in the machine department. We quote from the Department's Appeal Tribunal's Findings of Fact:

"The claimant was employed from July 3, 1975, through January 26, 1976, as an underground helper in the machine department for [the Appellee Magma].

On January 14, 1976, the employer posted notices advising employees there were to be lay offs of some workers by February 2, 1976. The notice indicated there were some vacancies for helpers to work on the surface. In addition to the written notice, a supervisor and the employment agent personally urged the claimant to apply for the transfer. Applications were to be submitted by January 16, 1976. Workers who transferred were to receive an eighteen per cent hour reduction [from

1. § 23–776. *Disqualification from benefits for failure to accept suitable work; exceptions.*

 A. An individual shall be disqualified for benefits if the department finds he has failed without cause either to apply for available, suitable work, when so directed by the employment officer or the department, or to accept suitable work when offered him, or to return to his customary self-employment when so directed by the department. The disqualification shall begin with the week in which the failure occurred and shall continue for the duration of his unemployment and until he has earned wages in an amount equivalent to eight times his weekly benefit amount otherwise payable.

 B. In determining whether or not work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in

his customary occupation and the distance of the available work from his residence.

 C. Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to an otherwise eligible individual for refusing to accept new work under any of the following conditions:

 1. If the position offered is vacant due directly to a strike, lockout or other labor dispute.

 2. If the wages, hours or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.

 3. If as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization. As amended Laws 1971, Ch. 172, § 28, eff. Aug. 15, 1971; Laws 1974, Ch. 155, § 5, eff. Aug. 11, 1974.".

$5.69 to $5. hour]. A worker could not return to the underground job until he worked a minimum period of six months on the surface. After the six months, if an opening occurred, employees could bid on the job, and depending on seniority, may or may not be returned to the former position.

The employment agent reported the claimant had refused to apply for the transfer because he wanted to be a truck-driver; however, the claimant informed the Department he did not apply because it was a loss of pay, seniority and expected the lay off to be temporary. The claimant was recalled on April 12, 1976, however refused because he had found other employment. The claimant was laid off due to a lack of work on January 26."

The Department's hearing deputy initially held that the invitation to apply for transfer did not constitute a firm and unqualified offer of employment. Thereafter, appellee sought administrative review. We now quote from the Appeal Tribunal's "Reasonings and Conclusions of Law" and "Decision":

"REASONINGS AND CONCLUSIONS OF LAW:

The employer has contested a determination which held the claimant established good cause for failure to accept work. The question raised must be decided under Section 23–776 of the Employment Security Law of Arizona * * *.

The Department's Benefit Policy Rules under which the Tribunal must make its decision provide for a disqualification to be assessed if the claimant refuses an offer of bona fide employment which is suitable.

\* \* \* \* \* \*

The claimant refused an offer to transfer to similar work at a reduction in pay because he would have lost recall rights to his former position. We find that the loss of recall rights made the offered work unsuitable.

\* \* \* \* \* \*

DECISION:

1. The deputy's determination is affirmed. The claimant refused an offer of unsuitable work. No disqualification is applicable."

After receiving a letter from the Director of the Department that the decision of the Appeal Tribunal would stand as the final decision of the Department, appellee filed an action in the Superior Court to set it aside. Hearings having been held by the Department, see A.R.S. § 12–910, the Superior Court reviewed the record and set the decision aside on the basis that there was no legal support for the conclusion that loss of recall rights made the offer of work unsuitable.

■■■■ Appellant first contends that Appellee did not make a genuine, unequivocal offer of work. This appears to have been the hearing officer's basis for decision. The difficulty with the contention is that while a preliminary overture or invitation to apply for work does not normally constitute an offer,[2] the Department's Appeal Tribunal appears to have found that an offer was in fact made here. While there is not an explicit finding or conclusion on the subject, the Tribunal's decision clearly so indicates and there was evidence before it which, taken with logical inferences, supports the implicit finding. Both the trial court and this Court are bound to accept the Department's factual determinations if reasonable support for them can be found in the record. 2 Am.Jur.2d Administrative Law, § 659. The Department's resolution of this essentially factual matter is dispositive of the issue.

Appellant next contends that we should hold as a matter of law that an offer which was made and expired before the claimant became unemployed cannot be an offer of suitable work within the terms of § 23–776.

Appellant cites in support of its position *Boeing Co. v. Employment Security Board of Review*, 209 Kan. 430, 496 P.2d 1376 (1972). In *Boeing*, the court observed that

2. *Calabi v. Department of Economic Security*, 135 Vt. 392, 376 A.2d 349 (1977).

the skilled claimant "had not experienced any of the privations of unemployment" at the time the employer made him an offer of semi-skilled employment at a significantly reduced wage and construed the Kansas statute to require that the claimant be given "a reasonable period of time to seek work at his highest skill and rate of pay commensurate with his previous employment." Appellant also points to the provisions of § 23–776, which in their reference to onset of disqualification and consideration of the factor of "length of unemployment" appear to contemplate responses to offers made after termination of employment.

 It is clear from its decision that the Department found the pretermination offer of continued employment properly considerable as an offer of work under § 23–776. We believe that it was entitled to do so. While § 23–776 is framed with the situation of unemployment in mind, we do not find in its provisions an intent that only post-employment offers may be considered.[3] In *Boeing*, the offer was of semi-skilled labor to a skilled worker. The situation was analogous in *In re Troutman*, 264 N.C. 289, 141 S.E.2d 613 (1965), cited by appellant; see also *United States Steel Corp. v. Department of Economic Security & Board of Review*, 523 P.2d 854 (Utah 1974), and *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor*, 37 Ill.App.3d 704, 346 N.E.2d 399.[4] The present case involves roughly parallel rather than subordinate employment. The case of *Pennington v. Dudley*, 10 Ohio St.2d 90, 226 N.E.2d 738 (1967), reaches a conclusion contrary to *Boeing*. See also *Unemployment Compensation Board of Review v. W. R. Grace Co.*, 23 Pa.Cmwlth. 237, 351 A.2d 297 (1976). We conclude that the fact that an offer was made and expired prior to termination of

employment does not, ipso facto and alone, exclude it from being an offer of suitable work. We hasten to add that the timing of such an offer may be a critical factor in determining whether an employee has cause to reject the offer under § 23–776. We also again point out (Footnote 2, supra) that the issue may have been more properly analyzed under the voluntarily left-work provisions of § 23–775. Essentially the same considerations, however, would apply.

Appellants' last two contentions are that the trial court erroneously misconceived the Department's decisive finding to be one of law rather than one of fact and that in any event, the alternative work offered was unsuitable.

 The decision of an administrative body is subject to being set aside where it is arbitrarily or capriciously conceived or where the ruling amounts to an abuse of discretion. See *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 283 (App.1977), and cases cited. An error of law or in the interpretation or application of law may thus infect a decision. See generally, 1 Am.Jur.2d, Administrative Law, §§ 650, 651, 654, 655.

 Initially, we believe that both the trial court and this Court must take the Department's decision as we find it. The Department possesses administrative expertise in the area and it is vested with the basic responsibility of determining qualification or disqualification for benefits in accordance with the statute. Thus, while the trial court and this Court will liberally construe a decision of the Department to effectuate its basic intent, we will not recast the agency decision in a way which, although arguably perhaps making it more sustainable, does not reflect its clearly expressed basis. Here, the Appeal Tribunal clearly held under its "Conclusions of Law" that

---

3. Neither the Department nor counsel have analyzed the factual situation before us in terms of whether the claimant was disqualified for voluntarily leaving work without good cause. See A.R.S. § 23–775(1).

4. The latter two cases involve the practice of "bumping" pursuant to union contracts. The

concurring opinion of Justice Crockett in *United States Steel* sets forth some pertinent general observations on the cooperative accommodation of employer and employee interests to offers of continued employment in times of slack labor demand.

"the loss of recall rights made the offered work unsuitable." We will accordingly examine the decision of the Department based upon its expressed rationale.

With the foregoing principles in mind, we believe that the question of whether the Department's conclusion in regard to loss of recall rights constituted a proper application of § 23–776 was subject to review by the trial court.

Section 23–776(B) sets forth certain factors which are to be considered by the Department in determining suitability of work. We agree with appellant that this list is not exhaustive, and that other relevant factors may also be taken into consideration. *In re Watson*, 273 N.C. 629, 161 S.E.2d 1, 35 A.L.R.3d 1114 (1968). We also agree that loss of recall rights is a factor that may be taken into consideration. See and compare a line of Michigan cases: *Lyscas v. Chrysler Corp.*, 76 Mich.App. 55, 255 N.W.2d 767 (1977); *Gilliam v. Chrysler Corp.*, 72 Mich.App. 538, 250 N.W.2d 123 (1977); and *Losada v. Chrysler Corp.*, 24 Mich.App. 656, 180 N.W.2d 844 (1970). In this case, however, Riddles had little seniority or experience on his old job to forfeit. He had only been employed on the job for some six months. Also, the loss of right to apply for retransfer back to the underground job would have been only temporary, for a six-month period. Even though the layoff was thought to be temporary, there was no indication as to how long it might last. Under these circumstances, we do not believe that the loss of recall rights can be said to have rendered the offered work unsuitable or given the claimant reasonable "cause" to reject it. We have not found any authority which under analogous facts supports the Department's conclusion to the contrary.

Appellant contends that in any event the offer was for work that was unsuitable and that under all of the circumstances the Department reached the right decision. Appellant relies for this contention primarily upon *Ariz. Dept. of Ec. Sec. v. Transamerica, etc.*, 114 Ariz. 215, 560 P.2d 70 (App. 1977).

In *Transamerica*, the claimant had worked for the employer for five years prior to her unemployment by reason of pregnancy. She had achieved a position requiring less supervision than the position subsequently offered. She wanted a higher salary and better promotional opportunities than those offered to her by Transamerica and the Department ultimately found that she had cause to reject the employer's offer based upon her reasonable prospects of obtaining significantly better paying work. This Court, reversing the trial court, sustained the Department's decision.

The situation here is markedly different. Functionally, the work offered was substantially the same. It did not involve a change of laboring status, as from skilled to semi-skilled, or the risk of loss of marketable skills—a factor considered critical in many of the decisions.[5] The differential in wages was approximately 3%. The record indicates that the claimant Riddles either intended to simply ride out the layoff or change his occupation to truckdriving because he preferred that line of work. In fact, he moved to Texas and changed occupations prior to recall. The offer was made a short time prior to layoff. Under all of the circumstances, and bearing in mind that a reasonable and practical interpretation should be accorded the concept of "suitable work," we believe that the work offered here should have been considered suitable.

The judgment of the Superior Court is affirmed.

WREN, P. J., Department A, and CORCORAN, J., concur.

NOTE: The Honorable ROBERT J. CORCORAN, Judge of the Superior Court of Maricopa County, participated in this decision as authorized by order of the Supreme Court of the State of Arizona filed January 16, 1979.

### OPINION ON REHEARING

DONOFRIO, Judge.

Appellants have asserted in its motion for rehearing that this Court factually miscon-

---

5. See generally Annot., 97 A.L.R.2d 1125 (1964).

strued the record. With the exception of one immaterial error of a typographical nature, we reject those assertions and deny the motion for rehearing.

The third paragraph quoted from the Findings of Fact of the Appeal Tribunal at page 3 of the Opinion should read as follows (words and figures omitted from or transposed in the original opinion are underscored):

> Workers who transferred were to receive an eighteen <u>cent per hour</u> reduction [from $5.69 to $5.<u>51</u> per hour]. A worker could not return to the underground job until he worked a minimum period of six months on the surface. After the six months, if an opening occurred, employees could bid on the job, and depending on seniority, may or may not be returned to the former position.

The main thrust of appellants' motion for rehearing is directed toward whether an offer of alternative employment was made to Riddles. While it is true that the Tribunal's Findings of Fact do not explicitly conclude that there was an offer, its Reasonings and Conclusions of Law state:

> The claimant refused an offer to transfer to similar work at a reduction in pay because he would have lost recall rights to his former position. We find that the loss of recall rights made the offered work unsuitable.

The Tribunal had before it the supportive testimony of the witness Powell and we believe a finding that an offer was made is clear. We find nothing to indicate an alternative finding or conclusion that an offer was not made.

■ The term "hearing officer" is one of generic use in administrative law. No error results from referring to the initial decision maker as a "hearing officer" rather than a "claims deputy."

Appellants' remaining contentions are addressed in the opinion.

The motion for rehearing is denied.

WREN, P. J., Department A, and CORCORAN, J., concur.

NOTE: The Honorable ROBERT J. CORCORAN, Judge of the Superior Court of Maricopa County, participated in this decision as authorized by order of the Supreme Court of the State of Arizona filed January 16, 1979.